## FRED H. MAGEAU v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 31, 1908.

Nos. 15,949—(215).

**Evidence Insufficient to Sustain Verdict.**

In a personal injury action, *held*, that there was no substantial evidence to sustain the verdict, and that the trial court therefore properly ordered judgment for the defendant notwithstanding the verdict for the plaintiff.

**Physician's Opinion Insufficient to Sustain Verdict.**

The opinion of a physician that the death of a person was due to one disease, instead of another, both diseases being caused by the action of germs and manifested by similar external symptoms, based upon general observation, without a post mortem or microscopical examination, is too conjectural, theoretical, and uncertain, standing alone, to sustain a verdict.

After a new trial was ordered upon the former appeal (102 Minn. 399), the case was again tried before Watts, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order granting defendant's motion for judgment notwithstanding the verdict, plaintiff appealed. Affirmed.

*Halvor Steenerson* and *Charles Loring,* for appellant.

*J. W. Mason* and *J. H. Maybury,* for respondent.

ELLIOTT, J.

On September 12, 1906, plaintiff's intestate, Mrs. Mageau, while a passenger on one of the trains of the Great Northern Railway, received certain injuries, the immediate result of which was the retroversion of the uterus. Some weeks thereafter she was successfully operated upon for this trouble. On February 5, 1907, Mrs. Mageau gave birth to a child. During the interval she had suffered from various troubles, and for some time had been in the hospital, where she was treated for bronchitis. The child had to be removed by means of instruments, and was dead when born. Five days after the birth of the child, Mrs. Mageau, it is claimed, died of peritonitis; and the question is whether the railway accident is the

[1] Reported in 119 N. W. 200.

proximate cause of her death. The court ordered judgment for the defendant notwithstanding a verdict for the plaintiff, and from that order the plaintiff appealed.

The sole question is whether there was any substantial evidence tending to show that the railway accident was the proximate cause of Mrs. Mageau's death. When this case was here on former appeal (102 Minn. 399, 113 N. W. 1016), we were of the opinion that no connection had been shown between the injury received at the time of the railway accident and the peritonitis, which was the immediate cause of death. As we now understand it, the claim is that peritonitis is a germ disease, and any germ which causes inflammation may cause the infection. The railway accident caused injuries which induced inflammation; but it was confined to a local area until it was disturbed by the forcible delivery of the child, when it rapidly extended, until it became general and caused death. Stated in other words, the germs which caused peritonitis, being always present in the system, were set to work by the blow received at the time of the accident; but the sphere of their operation was localized until the removal of the child broke down the protecting walls and set the germs free to extend their operations. No further infection was necessary. The localized inflammation merely spread. The defendant contends that the infection resulted from the time the child was born, and that the condition which resulted therefrom had no connection with the accident, which had occurred four and one half months previously.

Dr. Kjelland was called to attend Mrs. Mageau on the second day after the accident. He found her in a nervous condition, which suggested that there had been a retroversion of the uterus. This was confirmed by an examination; but, as the woman was pregnant and he feared a miscarriage, an operation was not performed at that time. He found soreness on the lower part of the abdomen and slight bruises, with discolorations, on the back. Three days after the examination was made the patient was removed to a hospital, where an operation was performed and the uterus replaced in its normal position. The operation was successful, and Mrs. Mageau remained at the hospital, with proper care and nursing, for about three weeks, when she was taken to her home. Her general health was poor,

and this, with an attack of bronchitis, led to her being taken back to the hospital, where she could receive better care and treatment. She remained in the hospital from November 1 until her death.   The soreness of the abdomen continued, and she was in a nervous condition, but evidently not greatly more so than women usually are under such circumstances.   On February 5 the child was born; but it was dead, and had to be removed by the use of the hands and instruments.   Dr. Kjelland testified that immediately thereafter "her condition was fairly good, considering the delivery we had made, and remained good the next morning, and during the daytime she felt fairly well.   In the evening, I think it was, she commenced to feel a pain, commenced to have a little temperature, I think it was 101 in the evening [of the 6th].   *   *   *   98⅖ is normal.   Of course, 99⅕ would not be considered much for confinement.   This condition gradually got worse.   She was very tender all over the lower part of the abdomen, and gradually got worse and spread, and the temperature got higher,   *   *   *   and developed into general peritonitis."   She died on February 11.

In answer to the question: "What do you attribute that to, that peritonitis?   What caused it?"—the doctor answered, "The final decision that we had was that this local condition that we had all the time from the time of the injury—that it spread and became general."   The original soreness caused by the accident was, in his opinion, the cause of her death.   All conceded that peritonitis is a germ disease; but no post mortem examination was held, and there was no microscopic examination for the purpose of discovering the character of the germs.   On cross-examination Dr. Kjelland said: "My theory is this:   When she received that local injury, she probably had local infection there, probably through the circulation, or through the viscera, and nature always tends to heal these things over, throws a wall around the break, and that remained that way until the delivery of this child, when it became necessary to handle those parts roughly, and possibly break open this place."   Local peritonitis— that is, inflammation of a restricted area—the witness testified could be caused by a bruise which became infected, and the germs thus be carried throughout the system.

The defense was claiming that Mrs. Mageau's death was caused by septicæmia, instead of peritonitis, and that the infection occurred at the time of the child-birth. On cross-examination Dr. Kjelland said that he did not examine with a microscope to see if the patient was infected with a tubercular germ, but did not think it was that kind. He did not know whether it was a gonococcus, could not say what kind of a germ it was, but there was nothing to indicate that it was either of these germs, and finally: "Q. It was neither of these two germs that caused the peritonitis? A. No, sir."

The defendant's expert, Dr. Quinn, testified, and it stands uncontradicted, that the bacilli of tuberculosis and gonorrhea are the only kind which are understood by the medical profession to remain latent in the human system. Dr. McEachran also developed the theory that the general peritonitis was the result of the spreading of the local peritonitis, and, basing his answer on the testimony of Dr. Kjelland, gave it as his opinion that the injuries received at the time of the accident probably caused the peritonitis from which Mrs. Mageau died. There is a great deal of evidence relating to the difference between peritonitis and septicæmia, and various and conflicting views were expressed by the experts. It is all very confusing, and could have meant but little to the jury. The gist of it all is that Drs. Kjelland and McEachran are of the opinion and believed that the accident caused an injury which caused local peritonitis, which was aggravated by the child-birth and resulted in the death of Mrs. Mageau.

The difficulty with the plaintiff's case is that it rests entirely upon conjectures and beliefs, which do not seem to have any substantial, established facts back of them. It was necessary to show a causal connection between the railway accident and the death. It is true that his expert witnesses testified that they believed that the accident caused local inflammation, which remained until the birth of the child, and that the removal of the child by means of the hands and instruments merely aggravated existing conditions. All the witnesses agreed that peritonitis and septicæmia are due to the activity of germs; but they disagreed as to practically everything else. Plaintiff's experts testified that peritonitis was present almost im-

mediately after the railway accident; but it is all pure conjecture whether that was the cause of the death.

No post mortem examination was held, and no attempt was made at any time to discover the kind of germs which were at work. The fact that a person is a practicing physician or surgeon generally qualifies him to testify as an expert; but in a matter of this kind the absence of special qualification may greatly affect the value of the evidence. No special qualifications on the part of the experts were shown for forming an opinion upon these delicate and controverted problems.

The mere opinion of a physician as to whether the death of this woman resulted from peritonitis resulting from the accident, or from infection occurring at the child-birth, expressed without having made a careful, scientific investigation and examination, will not, alone, sustain a verdict. It is too uncertain and conjectural to form the basis for a verdict which results in the transfer of a large amount of the property of one person to another. We do not mean to say that expert evidence of this character has not probative value, when it is based upon facts which are themselves established. In this case, however, the opinion of the expert rests upon theories, as to which there seems to be no substantial agreement. It is a mere sequence of conjectures. The court, therefore, properly ordered judgment for the defendant, and that order is affirmed.

Order affirmed.

LEWIS, J.

The evidence presented by this record is not substantially different from that considered on the former appeal, 102 Minn. 399, 113 N. W. 1016, and I concur in the result.