STATE EX REL. JOHNSON HARDWARE COMPANY AND
ANOTHER v. DISTRICT COURT OF CARVER
COUNTY AND ANOTHER.[1]

May 7, 1920.

No. 21,735.

**Workmen's Compensation Act — injury from fumes of acid — findings based on conjecture.**

1. The evidence discloses no facts which will justify an inference that "Hodgkin's disease," from which the employee died, resulted from ulcerations in the mucous membrane of his nose, or that those ulcerations were caused by inhaling the fumes of hydrochloric acid used by him in his work as a tinner, and the findings to that effect rest wholly on conjecture.

**Maximum amount allowed to defendents.**

2. In 1918 the maximum amount which the compensation law allowed to dependents in case of death was the sum of eleven dollars per week.

**Interest on future instalments.**

3. Instalments payable in the future do not bear interest.

---

Upon the relation of Johnson Hardware Company and London Guar-

[1] Reported in 177 N. W. 644.

antee and Accident Company, Limited, the supreme court granted its writ of certiorari, directed to the district court for Carver county and the Honorable C. M. Tifft, judge thereof, to review proceedings in the district court under the Workmen's Compensation Act brought by the widow of Henry J. Hoernemann, deceased, employee, against the Johnson Hardware Company, employer, and its insurer.   Reversed.

*K. A. Campbell* and *B. Burness,* for relators.

*P. W. Morrison,* for respondents.

TAYLOR, C.

Certiorari to review an award under the Workmen's Compensation Law made by the district court of Carver county to the widow of Henry J. Hoernemann, deceased.

Henry J. Hoernemann died from what is known as "Hodgkin's disease" on October 14, 1918.   He had followed the occupation of a tinner and plumber for more than 20 years and was employed in that capacity by the relator hardware company, at Hector, Minnesota, at the time he became ill.   The trial court found that the disease which caused his death, known as "Hodgkin's disease," resulted from ulcerations of the mucous membrane of his nose, and that these ulcerations were caused by inhaling the fumes of hydrochloric acid used by him while engaged in the performance of his duties as a tinner.   The relators contend that there is no evidence whatever to sustain these findings.

Mr. Hoernemann became ill in the latter part of April, 1918, and consulted a physician of Hector who first treated him for la grippe and later for Bright's disease.   He removed with his family to the village of Norwood and on June 2, 1918, consulted Doctor Eklund of that place who made an examination and diagnosed his ailment as "Hodgkin's disease."   In this examination Doctor Eklund found two ulcerated spots on the septum of the nose, one of which had already healed.   He also learned that before becoming ill Mr. Hoernemann had repaired two large water tanks, used for watering stock, by soldering the leaky places in them.   The time when this work was performed was not fixed with any degree of certainty—one witness saying that it was while the snow was on the ground and another that it was later.   At the trial, Doctor Eklund testified that in his opinion the ulcerations, which he found,

were caused by inhaling the fumes of the hydrochloric acid used in these soldering operations, and also testified that in his opinion the "Hodgkin's disease" from which Mr. Hoernemann died resulted from these ulcerations. The findings challenged rest upon this testimony.

Hydrochloric acid, also called muriatic acid in the testimony, is constantly used by tinners in their soldering operations to clean the metal, and they frequently inhale fumes from it. It is conceded that these fumes are sterile containing no disease germs, and, so far as the evidence discloses, no deleterious effects result to the tinners from inhaling them. Mr. Hoernemann had used this acid in his work for more than 20 years, and, so far as appears, never claimed to have suffered any injury or inconvenience from the fumes. The inhalation, which is claimed to have caused the ulcerations in question, occurred more than a month before the discovery of the sores. The doctor testified that he was unable to say how long these sores had existed, and that they might have developed within two or three days after the injury or irritation which caused them. He stated that they may have been caused by inhaling dust or dirt or in many other ways. He also stated that in his opinion they might have been, and in this case probably were, caused by inhaling strong fumes of hydrochloric acid which burned the membrane, but admitted that he had never known of such a case, although he had known of many instances in which such fumes had been inhaled.

The medical experts on both sides state that "Hodgkin's disease" is a disease of the lymph and lymphatic glands; that it is not of germ origin so far as known; that what causes it has not yet been discovered; that no remedy or cure for it has yet been discovered; and that it is progressive and fatal, although in some cases its progress may be arrested for a time by radium treatment. Although Doctor Eklund stated each time the question was asked that it was his opinion that Mr. Hoernemann had contracted "Hodgkin's disease" from the ulcerations in his nose, the doctor also stated that he did not know the origin of that disease nor what caused it, and that this was the only case of that disease which he had ever found or treated in his practice. The relators presented testimony to the effect that the ulcerations could not have been caused by the fumes of the acid, and that "Hodgkin's disease" could not have been caused by these ulcerations, but we have con-

sidered only the testimony of Doctor Eklund, as this is the testimony on which the claimant relies to sustain the findings.

Ulcerations in the nose are of frequent occurrence and result from innumerable causes. We find nothing in the record tending to point out in any manner the particular cause of the ulcerations in question. That the irritation or injury which produced them may have been caused in many different ways, and may have occurred long after the soldering operations, is evident from Doctor Eklund's testimony. He points out no reason for inferring that they resulted from one rather than another of the several causes which may have produced them. That acid fumes had been inhaled in soldering can hardly be considered a reason for attributing them to such fumes, for there is no evidence that they had their inception at or about the time of such inhalation, and no evidence that injury has ever resulted from inhaling such fumes under such circumstances, although all tinners frequently inhale them. Doctor Eklund's statement that in his opinion Mr. Hoernemann became afflicted with "Hodgkin's disease" because of the ulcerations of the mucous membrane of his nose, when taken in connection with the doctor's further statement that he does not know how that disease originates nor what causes it, can be considered only as a mere guess. It is undisputed that medical science has not yet discovered how this disease is produced or what causes it, and no attempt was made to show that it follows traumatic injuries, or that such injuries have any part in producing it. If the evidence had disclosed any facts from which a reasonable mind could legitimately infer a causal connection between the inhaling of the acid fumes and the disease which caused death, the finding of the trial court would be final. State ex rel. Neissen v. District Court, 142 Minn. 335, 172 N. W. 133; State ex rel. Green v. District Court, supra, page 96, 176 N. W. 155; State ex rel. Berquist v. District Court, supra, page 127, 176 N. W. 165. But we are forced to the conclusion in this case that the evidence discloses no basis of fact for the findings in question, and that they rest wholly on conjecture and therefore cannot be sustained. Mageau v. Great Northern Ry. Co. 106 Minn. 375, 119 N. W. 200; Wendt v. Bowman & Libby, 126 Minn. 509, 148 N. W. 568; Ginsberg v. Burroughs Adding Mach. Co. 204 Mich. 130, 170 N. W. 15.

Although the above conclusion leads to a reversal, it may be well to

mention that the amount awarded the widow exceeded the maximum amount allowable under the statute. Section 8208, G. S. 1913, as amended in 1915, fixes the compensation payable to dependents in the cases in which such dependents are entitled to compensation under the law. The court awarded the sum of $55 per month in accordance with subdivision 7 of this section, and apparently overlooked subdivisions 17 and 19 thereof, which limit the amount allowable to such dependents in any case to the sum of $11 per week. The court also allowed interest on the monthly payments to be made in the future. We find no warrant in the law for allowing interest, before they become due, on instalments which by the terms of the law are payable in the future. Judgment reversed.

HALLAM, J. (dissenting).

I dissent.