## Commonwealth v. Ford

*Clarence M. Lawyer, Jr., district attorney*, and *Morton H. Kagen, assistant district attorney*, for Commonwealth.

*Luria & Still*, and *Raymond R. Smith*, for defendant.

SHERWOOD, P. J., April 13, 1951.—After conviction by a jury on a charge of operating a motor vehicle while under the influence of liquor, defendant filed motions for a new trial and in arrest of judgment. At the trial defendant admitted that he was the driver of the automobile on July 2, 1950, and the sole question presented for the jury's determination was whether or not he was under the influence of liquor.

At the trial the arresting officer testified that he saw defendant stagger out of the Elks' Club on West Princess Street, in the City of York, Pa., get into his parked car; that he then advised defendant not to drive the car due to his intoxication; that defendant made no attempt to drive the car and got out of the car at the time the officer advised him not to drive. The officer then left the parked car and proceeded some 500 feet away to a police call-box intending to make a call to police headquarters. The officer testified that he then

saw defendant get into his car and started to drive westwardly from the Elks' Club, on Princess Street, in the direction of the point where the officer was attempting to telephone headquarters. The officer used a flashlight to stop defendant, it being about 3 o'clock in the morning, and arrested him for driving a car while under the influence of liquor. The officer testified he had full opportunity to see and to observe defendant's condition, that there was a strong odor of alcohol upon his breath, that his speech was thick, his eyes glassy, and that he staggered. A number of brother officers who saw defendant and had full opportunity to observe him corroborated the arresting officer in that, in their opinion, defendant was under the influence of liquor. This was denied by defendant and several witnesses who were called in his behalf and had an opportunity to observe him. This raised the issue for the jury's determination as to whether defendant was or was not under the influence of intoxication.

The Commonwealth admitted that Joseph T. Ford, defendant, had been in the hospital and that he had had a heart attack within 10 days of the date on which he stands charged with having violated the law. The Commonwealth further admitted that defendant had been treated by Dr. L. K. Remley. The last time the doctor saw defendant was June 26, 1950, five days before the arrest. Counsel for defendant called Dr. L. K. Remley as a witness and the Commonwealth objected that his testimony was immaterial unless Dr. Remley examined defendant on the date in question. The court excluded the testimony and counsel for defendant made an offer to prove by the doctor that defendant had been suffering from a coronary occlusion and that it would be difficult for a layman to distinguish between that infirmity and alcoholism. The Commonwealth objected to the offer and the court sustained the objection with counsel for defendant being granted an exception.

At the argument defendant contended that the court erred in excluding the testimony of Dr. Remley, and the questions now before the court are as follows:

1. Was the testimony to be given by Dr. L. K. Remley as shown by the offer of counsel for defendant material?

2. Did the admission by the Commonwealth of the fact of Joseph T. Ford's suffering a heart condition and the admission that he was treated by Dr. L. K. Remley preclude any further testimony by the doctor?

Dr. Remley, admittedly, did not examine defendant on July 1 or July 2, 1950, and had no way of knowing what his physical condition or symptoms or manner was on the day in question. Defendant was not harmed in any manner because it was stipulated by the Commonwealth that defendant had suffered a coronary occlusion.

In Pennsylvania the law is clear as set out in Pennsylvania Trial Practice, 3rd ed., sec. 333:

"When the facts are admitted or proved by evidence which is not conflicting, the expert may give an opinion based thereon."

In this case, in spite of the stipulation by the Commonwealth that defendant suffered a coronary occlusion, the facts are in conflict as to defendant's condition on July 2, 1950, with respect to intoxication. The case of Gilman v. Media Etc., Electric Railway Co., 224 Pa. 267, cited by defendant in his brief, negatives defendant's contention, in that it states:

"It is the province of the jury to determine the facts. An expert cannot be asked his opinion upon the whole evidence . . . where that is conflicting."

Also, in Wissinger v. Valley Smokeless Coal Co., 271 Pa. 566, also cited by defendant in his brief, it states as follows:

"Where facts are admitted or proven by evidence which is not conflicting, an expert may give his opinion founded on that testimony; . . . but *where there is a con-*

*flict he must base his opinion on facts within his knowledge."* (Italics supplied.). In the light of this latter case, Dr. Remley could only testify as to the facts within his knowledge, namely, that defendant had coronary occlusion; he could not testify as to defendant's manner or actions on July 2, 1950, as he had no knowledge of defendant on that day.

In L. R. A. 1915-A, page 1057, it is stated that a witness' knowledge based on personal observation must not appear to lack adequate data as its basis of influence. This statement furthers the Commonwealth's argument that Dr. Remley was not competent to testify as to defendant's actions on July 2, 1950, as he had no knowledge of the manner in which defendant acted on that day. It is the general rule of law that neither expert nor nonexpert opinions are admissible where a witness, in order to form his opinion, must draw the deductions from facts which can be fully and adequately presented to the jury and passed on intelligently by it. The witness is not entitled to express an opinion merely because he happened to be an expert. It must be a subject wherein the expert opinion is of more value than that of the nonexpert by reason of his special knowledge: L. R. A. 1915-A, page 1057; Brown on Pennsylvania Evidence, page 119.

In Kuhn v. Ligionier Valley R. R., 255 Pa. 445, and later cases in Shepard's Citations, it was held:

" 'Necessity is the ground of admissibility. The moment the necessity ceases, the exception to the general rule that requires of a witness facts and not opinions ceases also. Hence, whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible.' "

One need not have any specific rule to determine from the facts as to whether a person is intoxicated

or is not intoxicated. This the jury was fully competent to do in the present case since all of the facts as presented by witnesses of both defendant and the Commonwealth as to his condition on July 2, 1950, were presented to the jury: MacFeat v. Philadelphia, W. & B. R. Co., 5 Penn. (Del.) 52, 62 Atl. 898; Chicago City R. Co. v. Smith, 69 Ill. App. 69; State v. Rainsbarger, 74 Iowa 196, 37 N. W. 153; Van Zandt v. Mutual Ben. L. Ins. Co., 55 N. Y. 169, 14 Am. Rep. 215.

In order that an expert opinion as to causation may be admissible, it must be based on facts either observed or in proof; mere guesses or speculative opinions being inadmissible: Grand Rapids & I. R. Co. v. Huntley, 38 Mich. 537; Mageau v. Great Northern R. Co., 106 Minn. 375, 119 N. W. 200; Montgomery v. Long Island R. Co., 55 Hun. 611, 8 N. Y. Supp. 811; Kinney v. Brotherhood of American Yeomen, 15 N. D. 21, 106 N. W. 44.

In the instant case, Dr. Remley could not state his opinion as to causation because it is admitted Dr. Remley had no facts as to the man's manner and actions on July 2, 1950. The fact that he had suffered from coronary occlusion had already been stipulated by the Commonwealth and was before the jury.

In Green v. Ashland Water Co., 101 Wis. 258, it is stated that an examining or attending "physician may testify, as to the cause of death, from personal examination or knowledge . . . extends no further than the immediate cause." Dr. Remley, therefore, under the rules set forth in this case, could only testify as to defendant's illness and could not testify as to his manner or actions on July 2, 1950. Further, it is held in Fuhry v. Chicago City R. Co., 239 Ill. 548, 88 N. E. 221, that a physician could not base an opinion as to the causation of a physical condition on subjective symptoms and self-serving statements which would

have been the case in the present instance if Dr. Remley had been allowed to testify. It has been held by many courts that although an expert may express an opinion as to what could or might have caused a particular physical condition or sickness, he cannot be permitted to express an opinion that an alleged cause would cause the particular condition or sickness. Where the actual cause is a disputed issue of fact, the ground being that in such case that question is the ultimate fact for the jury, an expression of opinion thereof by an expert would be an invasion of the jury's domain.

Therefore, we hold that the exclusion by the court of the testimony of Dr. L. K. Remley did not deprive Joseph T. Ford of an essential part of his proof. The jury knew of his recent illness; the jury knew of his manner and actions on the day in question. From both defendant's witnesses and the Commonwealth's witnesses the jury had a complete and clear picture of defendant's condition at the time of his arrest and the reasons for his condition. From all this testimony the jury concluded that Joseph T. Ford was intoxicated at the time of his arrest and unfit to operate the motor vehicle he had been operating. Defendant received a fair trial and was ably represented by excellent counsel.

The other reasons assigned were that the verdict was against the evidence, the weight of the evidence and against the law. The testimony was highly contradictory; it presented an issue of fact for the jury's determination. Our conscience is not shocked at this verdict. Therefore, it follows that the motion for a new trial should be discharged.

At the argument no reason was asserted as to why the motion in arrest of judgment should be granted. This, too, should be discharged.

And now, to wit, April 13, 1951, it is ordered, adjudged and decreed that the motions for a new trial and in arrest of judgment are refused and discharged.