See also D.C., 161 F.Supp. 46.

**Frank ALTRICHTER, Plaintiff,**

v.

**SHELL OIL COMPANY, a corporation, Defendant and Third-Party Plaintiff,**

and

**C. L. Nelson, doing business as C. L. Nelson Company, and R. C. Jones, doing business as R. C. Jones Company, Inc., Third-Party Defendants.**

Civ. No. 1891.

United States District Court
D. Minnesota,
Fifth Division.

Nov. 27, 1957.

Charles W. Kennedy, Wadena, Minn., for plaintiff.

J. B. Johnson, Duluth, Minn., for defendant Shell Oil.

Geoffrey J. Mahoney, Minneapolis, Minn., for C. L. Nelson.

DEVITT, District Judge.

After a verdict for plaintiff in this personal injury action, the defendant moved for judgment notwithstanding the verdict or for a new trial. The defendant

has suggested numerous grounds in support of his motions. Two of them will be here considered. They are alleged errors in the admission of expert testimony and the insufficiency of the evidence to support the verdict.

The plaintiff was burned on September 26, 1956 when heat transfer oil supplied by the defendant spurted out of an asphalt melter and struck him while he was working on a highway repair job near Benson, Minnesota.

The melter in question had been designed by the plaintiff's employers for the purpose of reducing asphalt to a liquid state. It was of a double-chamber design, the outside chamber containing "Valvata 85", the heat transfer oil supplied by the defendant. The "Valvata 85" was first heated in the melter and it in turn supplied heat to melt the asphalt.

On the day before the accident Valvata 85 was placed in the melter and the burners turned on. After the oil had been heated for some time, a leak developed in the melter. The oil was removed from the melter, replaced in the barrels from which it had been taken, and the leak repaired. On the following day, the day of the accident, the oil was again taken out of the barrels, placed in the melter, and the heating process begun. When the temperature of the oil reached about 440 degrees Fahrenheit, the oil, with no warning, spurted out of the vents on top of the melter and struck the plaintiff, who was standing with his back to the melter about 30 feet away. The plaintiff brought suit on the theory that some defect in the oil caused it to spurt from the melter.

The plaintiff produced three expert witnesses. One was the foreman of the road crew of which Altrichter was a member, and the other two were professional engineers, one mechanical and the other chemical. The witnesses were asked their opinion as to what caused the oil to spurt from the melter. All were of the opinion that the cause was some foreign substance in the oil. The defendant made a timely objection to the answer of the foreman, Fisher, and the mechanical

engineer, Lee, claiming they were not qualified to give an expert opinion on this question. No objection was made to Ruble's testimony.

■■ It is a well settled rule of law, both in the federal courts and in Minnesota, that the qualifications of an expert witness are matters to be passed upon within the discretion of the trial court. Chicago, Great Western Ry. Co. v. Beecher, 8 Cir., 150 F.2d 394. The test of a witness' qualification to give an expert opinion is whether his knowledge of the matter in relation to which his opinion is sought is such that it will probably aid the trier of the question to determine the truth. Woyak v. Konieske, 237 Minn. 213, 54 N.W.2d 649, 33 A.L.R.2d 1241. Admittedly the qualifications of Fisher and Lee were not the best; their deficiencies were brought out on cross-examination, however, and as brought out, they tended to affect the value and weight to be given to their testimony rather than its admissibility. See Webster Mfg. Co. v. Mulvanny, 168 Ill. 311, 48 N.E. 168.

■ Defendants' principal ground for relief is based on the alleged insufficiency of evidence to support the verdict.

In considering this question certain facts bearing upon the value and weight to be given to the expert testimony should be kept in mind. The first expert was Fisher, whose qualifications consisted of his having played some part in designing the melter and having spent six seasons working with it and others similar to it; he had no technical knowledge of chemistry or of the nature of the oil used in the melter. The second expert, Lee, was a registered mechanical engineer; he had no special qualifications in the field of chemical engineering and admitted having no knowledge of the chemical structure of the oil used in the melter. The only expert in the field of chemistry was Mr. Ruble; he made no tests of the oil in question nor did he personally examine the melter. In fact, he stated, "I am not familiar with Valvata 85." [R. 369, line 13.] None of the witnesses knew the nature of the alleged foreign substance in

the oil nor did they explain how it could cause the oil to be violently expelled from the melter. All were certain, however, that a foreign substance caused the accident.

In resolving this problem, it is helpful to consider the decision in Federal Electric Co. v. Taylor, 8 Cir., 19 F.2d 122, 125. In that case plaintiff sued to recover for injuries resulting from a shock sustained while working on the defendant's electric sign; the plaintiff contended that the shock resulted from a short circuit in the wiring of the sign. No direct evidence was introduced of any negligence, but the plaintiff produced an expert witness who testified, without examining the sign, that the shock could have come only from a short circuit. On appeal the court reversed the verdict for lack of substantial evidence to support. The court said, "There was no evidence whatever to sustain the charge of negligence, unless it be the testimony of the so-called expert witness * * *." The court then examined the expert testimony and concluded that the expert was confused concerning the question on which he was testifying. The court also noted that his experience with electric signs had not brought him into contact with the type involved in the case.

The facts here bear a close resemblance to the above cited case. There was little direct evidence of negligence; it is obvious that the verdict depended largely upon the expert testimony. As in the case above, the expert testimony has obvious weaknesses. The lack of substantial facts upon which the conclusion of the experts could be based is apparent here. No tests to determine what type of foreign substance would produce such a reaction were conducted; none of the experts explained why they thought that a foreign substance was present. The Minnesota Supreme Court has stated that an inference of negligence based upon an inferred fact, of which there is neither evidence nor predominating probability, cannot safely be made. State v. Paskewitz, 233 Minn. 452, 47 N.W.2d 199. Here the negligence was based principally on the in-ferred presence of a foreign substance. This is the type of reasoning the Minnesota court has condemned.

In Mageau v. Great Northern Ry. Co., 106 Minn. 375, 379, 119 N.W. 200, 202, the issue was whether a certain injury was the cause of decedent's death. No post mortem was held nor were other tests conducted to determine the cause of death. The court said:

"The mere opinion of a physician as to whether the death of this woman resulted from peritonitis resulting from the accident or from infection occurring at the child-birth, *expressed without having made a careful, scientific investigation and examination, will not, alone, sustain a verdict*. It is too uncertain and conjectural to form the basis for a verdict * * *. We do not mean to say that expert evidence of this character has not probative value, *when it is based upon facts which are themselves established*." [Emphasis added]

In State ex rel. Johnson Hardware Co. v. District Court of Carver County, 145 Minn. 444, 177 N.W. 644, a doctor's opinion that decedent was suffering from a particular disease was rejected as only a guess since the doctor stated that he did not know how the disease originated or what caused it.

A consideration of these cases and the principle they established compels the conclusion that the expert opinions relied upon by the plaintiff in the present case were of little value. I conclude that the verdict is contrary to the clear weight of the evidence and must be set aside.

There is some suggestion that the evidence introduced at the trial would now permit the verdict to be sustained on a res ipsa loquitur theory; maybe on a retrial, it can be, but it is sufficient to say that the case was not submitted to the jury on that theory. See Nadeau v. Maryland Casualty Co., 170 Minn. 326, 212 N.W. 595, 598. See also Maijala v. Great Northern Ry., 133 Minn. 301, 158 N.W. 430.

A new trial is ordered.