Frank ALTRICHTER, Appellant,

v.

SHELL OIL COMPANY, a corporation, Appellee.

No. 16027.

United States Court of Appeals Eighth Circuit.

Feb. 17, 1959.

Rehearing Denied April 18, 1959.

378

Charles W. Kennedy, Wadena, Minn. (Bradford & Kennedy, Wadena, Minn., were with him on the brief), for appellant.

Joseph B. Johnson, Duluth, Minn. (Reavill, Jenswold, Neimeyer & Johnson, Duluth, Minn., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant to recover damages for personal injuries suffered by him while he was in the employ of the R. C. Jones Company, a contractor engaged in repair of concrete paving. The appellee, Shell Oil Company, was the producer and refiner of the oil being used by the contractor in making the paving repairs at the time the appellant received his injuries. We shall refer to the parties as they were designated in the trial court.

As the basis for his cause of action, plaintiff in his complaint in substance alleged that defendant was negligent in preparing and furnishing the oil, and as a proximate result, the oil exploded or escaped from a container in which it was being used, causing injury to plaintiff; that defendant was requested to and undertook to furnish oil that would withstand a temperature of 600 degrees F.; that the oil furnished did not withstand a temperature of 600 degrees F., but exploded and escaped at a temperature considerably less; that defendant knew the purpose for which the oil was required and that the purchaser relied on the skill and judgment of defendant and that defendant warranted that the oil was reasonably fit for the purpose for which it was to be used; that it was not reasonably fit but was defective and dangerous and when applied to the intended use, it exploded and escaped. The complaint contained allegations as to the extent of plaintiff's injuries and other allegations bearing on the amount of his damages. Defendant, by way of answer, denied that it was guilty of any negligence, denied that it had breached any warranty, expressed or implied, and specifically denied that the alleged accident and the alleged resulting injury proximately resulted from any negligence or breach of warranty on behalf of the defendant. The action was tried to the court and a jury.

The basic facts are comparatively simple and without material dispute. Defendant Shell Oil Company sold and delivered to W. B. Thielen certain 53 gallon drums of its product designated in the record as heat transfer oil. Thielen in turn sold and delivered the same to the C. L. Nelson Company. Thereafter, the C. L. Nelson Company, on request of plaintiff's employer for a heat transfer oil, delivered the oil to plaintiff's employer. This product is known in the record as Valvata 85, and is a very thick or heavy residual product. It does not normally boil and has a flash point, the temperature at which combustion takes place on the surface of the oil, of approximately 600 degrees F. On the date of the accident resulting in plaintiff's injuries some four drums of this product, Valvata 85, were poured into an equipment of plaintiff's employer referred to in the record as the asphalt melter. After the heat was turned on for some time, it was found that the asphalt melter was defective in that it had

a three inch leak, so that the oil was escaping therefrom. When this was discovered, the asphalt melter was drained, the oil put back into the drums from which it had been taken, and the drums capped. The leak was then repaired by welding and the following day the oil was again taken from the drums and put back into the asphalt melter. The asphalt melter was again lighted, whereupon it apparently functioned normally until it reached a temperature of 440 degrees F., when some three barrels of the oil gushed out of the exhaust vents, striking plaintiff, inflicting serious injuries.

After the drums had been delivered to the contractor, they were in his exclusive possession and control, as was also the asphalt melter. It was the contention of plaintiff that the Valvata 85 contained a foreign or contaminating substance and he introduced testimony of expert witnesses in support of this contention. Of the plaintiff's expert witnesses, one was a mechanical engineer, one was a foreman of plaintiff's employer, and one was a chemical engineer. The chemical engineer, however, had never inspected the machine in question, nor had he made any analysis of the oil. It was the contention of defendant that some foreign substance, probably water, had contaminated the oil after it had been delivered to plaintiff's employer and that this contamination had caused the expulsion. The evidence will be further developed in the course of this opinion.

■ At the close of all the evidence defendant moved for a directed verdict, which was denied, and the case was submitted to the jury, which in due course returned a verdict for plaintiff for the sum of $27,500. Defendant moved for judgment notwithstanding the verdict, or for a new trial, and in due course, the court denied the motion for judgment notwithstanding the verdict but granted the motion for new trial and set aside the verdict and judgment. A second trial was had, resulting in a verdict for defendant, and the court entered judgment pursuant to the jury's verdict

dismissing plaintiff's action on its merits. From this judgment plaintiff prosecutes the present appeal. The case is unique in that it is not contended that the court committed any errors in the second trial of the action, but it is urged that the court erred in granting defendant a new trial following the first trial of the action. The sole issue raised by plaintiff on the appeal is whether or not the court erred in granting defendant a new trial. The ruling on this motion, in the circumstances here present, presented a question of law reviewable on this appeal. If this ruling of the court constituted error as a matter of law, then plaintiff would be entitled on this appeal to have the original verdict and judgment returned and entered on the first trial of the case restored. American Mfrs. Mut. Ins. Co. v. Wilson-Keith & Co., 8 Cir., 247 F.2d 249; Buder v. Fiske, 8 Cir., 174 F.2d 260. In support of his contention that the court erred in granting defendant's motion for a new trial plaintiff makes various contentions but we think we should first consider the applicable law governing the practice in granting a new trial. The court granted a new trial on the grounds of the insufficiency of the evidence. In doing so, the court points out that plaintiff's case is dependent upon the testimony of three expert witnesses. As to this testimony the court in its memorandum opinion and order among other things says:

"In considering this question certain facts bearing upon the value and weight to be given to the expert testimony should be kept in mind. The first expert was Fischer, whose qualifications consisted of his having played some part in designing the melter and having spent six seasons working with it and others similar to it; he had no technical knowledge of chemistry or of the nature of the oil used in the melter. The second expert, Lee, was a registered mechanical engineer; he had no special qualifications in the field of chemical engineering and admitted having no knowledge of the

chemical structure of the oil used in the melter. The only expert in the field of chemistry was Mr. Ruble; he made no tests of the oil in question nor did he personally examine the melter. In fact, he stated, 'I am not familiar with Valvata 85.' None of the witnesses knew the nature of the alleged foreign substance in the oil nor did they explain how it could cause the oil to be violently expelled from the melter. All were certain, however, that a foreign substance caused the accident. * * * The lack of substantial facts upon which the conclusion of the experts could be based is apparent here. No tests to determine what type of foreign substance would produce such a reaction were conducted; none of the experts explained why they thought that a foreign substance was present. The Minnesota Supreme Court has stated that an inference of negligence based upon an inferred fact of which there is neither evidence nor predominating probability, cannot safely be made. State by Burnquist v. Paskewitz, 233 Minn. 452, 47 N.W.2d 199. Here the negligence was based principally on the inferred presence of a foreign substance. This is the type of reasoning the Minnesota Court has condemned. * * * Mageau. v. Great Northern R. [Co.], 106 Minn. 375, 119 N.W. 200; State ex rel. Johnson Hardware Co. v. District Court, 145 Minn. 444, 177 N.W. 644."

▆ A motion for new trial is addressed to the judicial discretion of the trial judge and will not be reversed except for a clear abuse of that discretion. Anderson v. Federal Cartridge Corp., 8 Cir., 156 F.2d 681. Plaintiff assails the decision of the trial court in the granting of the motion for new trial on the grounds that the court did not view the evidence of the plaintiff in a light most favorable to him, and he further charges error in that the court assumed to pass upon the weight of the evidence, thus invading the province of the jury. It is true that in passing on a motion for a directed verdict the court must view the evidence of the party against whom the motion is directed in a light most favorable to him, and the court must also assume as proven all facts which the evidence reasonably tends to prove, and must give the party the benefit of all such favorable inferences as may be drawn from the facts proven. That, however, is not the rule applicable on motion for a new trial. On such a motion the court may weigh the evidence. The court may disbelieve witnesses and may grant a new trial even where there is substantial evidence to sustain the verdict. A trial court may, even on his own motion, grant a new trial where, in his judgment, it is necessary to prevent a miscarriage of justice. Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A.; 6 Moore, Federal Practice, Sec. 59.05(5), p. 3759; 3 Barron & Holtzoff, Federal Practice and Procedure, Sec. 1302; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352. The practice governing the trial court on motion for a new trial is exemplified by the opinion of the late Judge Parker in Aetna Casualty & Surety Co. v. Yeatts, supra, where, among other things, it is said:

"On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right."

The practice is very completely set forth in 3 Barron & Holtzoff, Sec. 1302, supra, where among other things, it is said:

"Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he

deems it in the interest of justice to do so. Such an order may be made either on motion of a party or on the court's own initiative; if the judge acts on his own initiative, he must state the grounds for his action in the order. The burden of showing prejudicial error rests on the party seeking the new trial. When the court is passing on a motion for judgment notwithstanding the verdict, it is bound to accept as true the evidence favorable to the verdict, even though there may be strong testimony to the contrary, but the court is not so hobbled in considering whether to order a new trial, and may rely on its own judgment as to the weight of the evidence. The motion invokes the sound discretion of the court, and is not reviewable, if at all, save for clear abuse of discretion.

"Rule 59 recognizes the initial common law principle that it is the duty of the judge who is not satisfied with the verdict of a jury to set the verdict aside and grant a new trial."

■ The burden of proof to establish actionable negligence on the part of defendant was of course upon plaintiff and it was not incumbent upon the defendant to prove that it was not guilty of negligence, nor was it incumbent upon the defendant to prove how or why the accident happened. The trial court so held, and carefully examined the expert testimony of plaintiff on which his cause of action depended, and was of the view that it was insufficient to sustain the verdict. We think there was no abuse of judicial discretion in granting the motion for new trial unless, as argued by the plaintiff, he was entitled to invoke the doctrine of res ipsa loquitur. It should first be noticed that the trial court refused to consider this question on the motion for new trial on the grounds that the case had not been tried on that theory. An examination of the record convinces that the trial court was correct in so holding, but quite

aside from this we think the facts preclude the application of the doctrine. The agencies or instrumentalities, to-wit, the asphalt melter and the drums of Valvata 85, were not in the exclusive possession and control of the defendant. The drums of oil had passed through the hands of two dealers before they reached the possession of plaintiff's employer, and while in the possession of plaintiff's employer the contents of four of these drums was poured into the asphalt melter. As we have heretofore observed, there developed a leak in the melter, whereupon the oil was drained out of the melter and poured into the drums. The melter was then repaired and the following day the oil was again poured into the melter. During all this time while the oil was being handled, the oil and the melter were in the possession and under the control of the contractor. There was no proof by chemical analysis or otherwise that the oil was contaminated by some foreign substance at the time of delivery, and the undisputed proof was to the effect that some foreign substance, probably water, caused the expulsion. It could not be inferred that the condition of the oil after it had been so handled by plaintiff's employer was the same as it was when it left defendant's possession. There was thus an opportunity for an intervening cause. Certainly there was as much likelihood that moisture or some other foreign substance contaminated the oil during its handling by the contractor as that there was any contaminating substance in it when it left the possession of defendant. In these circumstances plaintiff could not invoke the res ipsa loquitur rule. Seeden v. Great Northern Ry. Co., 242 Minn. 360, 65 N.W. 2d 178; Fandel v. Parish of St. John the Evangelist, 225 Minn. 77, 29 N.W.2d 817, 174 A.L.R. 600; Merritt v. Interstate Transit Lines, 8 Cir., 171 F.2d 605; 65 C.J.S. Negligence § 220(8) (bb). In Seeden v. Great Northern Ry. Co., supra, the Supreme Court of Minnesota, in defining the conditions under which the doctrine might be applied, said [242 Minn. 360, 65 N.W.2d 184]:

"*  *  * plaintiff must show that the claimed negligence was caused by an agency or instrumentality under the *exclusive control* of the defendants  *  *  *."

Manifestly, plaintiff was not entitled to the benefit of any inferences which might be drawn from the mere happening of the accident which caused his injuries.

We have considered all the other contentions of the plaintiff and think them without merit. The judgment appealed from is therefore affirmed.