Max SLATTON, Jr., Appellant-
Cross-Appellee,

v.

MARTIN K. EBY CONSTRUCTION CO.,
INC., d/b/a Eby and Associates of Ar-
kansas, Appellee-Cross-Appellant.

Nos. 74–1279, 74–1302.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1974.

Decided Nov. 18, 1974.

Henry Woods, Little Rock, Ark., for appellant.

James W. Moore, Little Rock, Ark., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and SMITH, Senior District Judge[*].

[*] The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The Honorable J. Smith Henley, Chief Judge of the United States District Court for the Eastern District of Arkansas.

2. The grant of a new trial is reviewable on appeal after the judgment is entered in the second trial. As noted in Altrichter v. Shell

GIBSON, Chief Judge.

Plaintiff Max Slatton, Jr., while working on a barge in the Arkansas River, injured his back and elected to bring this action for damages therefor under the Jones Act, 46 U.S.C. § 688, and under the maritime doctrine of unseaworthiness. A trial to a jury resulted in a verdict of $85,000. The trial court,[1] after offsetting $1,732.96 for workmen's compensation benefits already received by Slatton, ordered a remittitur of $33,267.04, leaving a net judgment of $50,000. The plaintiff refused to accept the remittitur and a new trial was ordered on the issue of damages. After an interlocutory appeal on the remittitur was denied, Slatton v. Martin K. Eby Construction Co., 491 F.2d 707, (8th Cir. 1974), the case was by agreement tried to the court solely on the issue of damages.

The trial court assessed damages at $19,000 and entered judgment for that amount less the workmen's compensation benefits offset. The plaintiff appeals, contending that there was a clear abuse of discretion by the trial court in granting a partial remittitur of the jury's verdict.[2] The defendant, Martin K. Eby Construction Co., cross-appeals, contending that the District Court lacked admiralty and Jones Act jurisdiction because Slatton was neither a seaman nor a crew member of a vessel in navigation at the time of his injury.

The plaintiff, a 32-year-old welder, sprained his lower back on May 16, 1972, when he and a coworker were attempting to move by hand a heavy (300–400 pound) piece of 12 inch diameter metal pipe across the deck of a floating work barge moored to a bank of the Arkansas River. The barge, 20 by 46

Oil Co., 263 F.2d 377, 379 (8th Cir. 1959), the "ruling on this motion [for a new trial in the first case], in the circumstances here present, presented a question of law reviewable on this appeal. If this ruling of the court constituted error as a matter of law, then plaintiff would be entitled on this appeal to have the original verdict and judgment returned and entered on the first trial of the case restored."

feet in size, was also secured to a "template," a temporary circular working platform made of steel, utilized in constructing a "dolphin." A dolphin is a permanent river structure to which vessels can be moored. The plaintiff and his coworker would cut lengths of metal pipe to be used in constructing the dolphin. These would then be moved from the barge to the template encircling the dolphin. On prior occasions a crane had been used to move the pipes from the barge to the template. No crane was available on May 16, and the employees attempted to transfer the pipe manually, one pulling while plaintiff pushed or scooted the pipe across the deck of the flat work barge. Halfway to the template, the plaintiff felt a sharp pain in his back and became numb in his extremities.

He spent a day in the hospital and then returned home. After a day at home he was readmitted to the hospital for a few days of therapy and traction. No surgery was performed, and the medical testimony concerning the injury, its permanency, and the prognosis for recovery were in sharp contrast. Aside from two attempts at light work with his former employer, he did no work from the summer of 1972 until about three weeks before the case was tried in October of 1973 when he finally took a job driving and parking automobiles at about half of his former income.

The plaintiff testified about recurring pain and inability to do heavy work. Neurological tests failed to reveal a ruptured disc or a tendon injury. An electromyographic study secured by plaintiff's doctor showed the plaintiff was basically normal with some "very mild changes" in his left tibial nerve. Another specialist secured by plaintiff's doctor performed a myelographic study in an attempt to determine whether or not the plaintiff had a ruptured or bulging disc in his lower back. The myelograph disclosed no abnormality or irregularity along the spinal canal and the specialist testified that his examination was completely negative. The plaintiff's physician, Dr. Rooney, thought he might possibly have a ruptured disc, but that if he did have one, it was healed by February 23, 1973. Dr. Rooney had released the plaintiff for light work within a month of the accident.

The trial court, in ordering the remittitur, found the jury's verdict to be "grossly and shockingly excessive" in light of the evidence.[3] Plaintiff contends that this action was an abuse of discretion. The first question we must consider is the extent of our review of the action of a trial court in requiring a remittitur as a condition for denying a motion for new trial. Defendant asserts that decisions of this circuit indicate we will only reverse such an action of a district court when there has been a "plain injustice" or a "monstrous" or "shocking" result.

We have indicated that this is the standard we apply for review of the refusal of the trial court to set aside a jury verdict on the grounds of excessive-

---

3. In its review of the verdict on Eby's motion for substantial remittitur the District Court stated:

There is no question that plaintiff sustained an injury to his back, and the Court thinks that the jury could properly find, as it obviously did find, that the injury was permanent, and that plaintiff is going to have some difficulty with his back in the future and has sustained some diminution of his ability to work and earn money in the future.

But the Court is forced to agree with defense counsel that the jury's verdict was grossly and shockingly excessive in the light of the evidence even after the de-

fendant is allowed credit for the workmen's compensation that plaintiff has received.

Personally, the Court thinks that an award within the range of $15,000 to $20,000 would have been fair and reasonable compensation to plaintiff, but the Court recognizes that the amount to be awarded in a case of this kind rests largely in the discretion of the jury. The Court thinks that the jury might have been justified under the evidence in awarding plaintiff as much as $50,000, but that any award in excess of that sum would have been so grossly excessive as to shock the conscience of the Court.

ness or inadequacy. As stated by Judge Blackmun, now Mr. Justice Blackmun, in Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447–448 (8th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed. 2d 192 (1961);

> [W]e shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.

Whether this in fact is a different standard than the abuse of discretion standard applied by other courts of appeals, as argued by defendant, is subject to some doubt, for as Judge Blackmum went on to say in *Solomon, supra* at 447–448:

> Perhaps this is saying nothing more and nothing different than what the other courts of appeals have said in varying language. Perhaps in practice this court has observed a somewhat tighter standard than the others. In any event, we still adhere to it.

(Footnote omitted.)

■ But whatever view may be taken of our standard for review of a trial court's action in refusing to overturn a jury award is not dispositive of the question before us in this case. Here we are not confronted on review with a jury determination as to a particular measure of damages buttressed by the conclusion of the trial court, who had the benefit of hearing the testimony and observing the demeanor of the witnesses, that the verdict should stand. When confronted with the concurrence of these two factors "an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial." Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145, 148, cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969).

■■ The situation presented by the present case requires an assessment of opposing considerations. A jury, upon consideration of the evidence, has awarded one quantum of damages. The trial court, upon his review of the evidence on the motion for new trial[4] has determined that the damages were excessive, in fact "grossly and shockingly excessive." We are always mindful that the primary judge of the facts is the jury, and that its decision on the facts deserves great weight. Opposed to this in the present case is the decision of the trial court that the jury's award is excessive. We have traditionally given trial judges a large range of discretion in ruling on motions for new trial, particularly on the weight of the evidence, in recognition of the fact that they have heard the testimony and observed demeanor of the witnesses and are more aware of the community and its standards. Solomon Dehydrating Co. v. Guyton, *supra,* 294 F.2d at 447. Further, it is settled that the action of the trial court in setting aside a jury verdict is not in derogation of the right to trial by jury, "but is one of the historic safeguards of that right." Altrichter v. Shell Oil Co., 263 F.2d 377, 380 (8th Cir. 1959), *quoting* Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 353 (4th Cir. 1941).

■■ The issue presented as to the standard of review of a remittitur ordered as a condition of denying a new trial motion is one of first impression in this circuit. We have carefully considered the competing considerations mentioned above and the decision in Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (5th Cir. 1970), where the same issue was presented for decision. We conclude that the standard we will apply in determining whether there was an abuse of discretion in ordering the remittitur is whether the remittitur

---

4. In its review of the evidence when passing upon a motion for new trial, the trial court is not limited to viewing the evidence in the light most favorable to the prevailing party. It may weigh evidence, disbelieve witnesses, and grant a new trial even when there is substantial evidence to sustain the verdict. Bates v. Hensley, 414 F.2d 1006, 1011 (8th Cir. 1969) ; Altrichter v. Shell Oil Co., *supra*, 263 F.2d at 380.

was ordered for an amount less than the jury could reasonably find. Gorsalitz v. Olin Mathieson Chemical Corp., 456 F.2d 180 (5th Cir. 1972). *Cf.* Taylor v. Washington Terminal Co., *supra*, 409 F.2d at 148:

> In this jurisdiction particularly, District Court judges have given great weight to jury verdicts. They have stated that a new trial motion will not be granted unless the "verdict is so unreasonably high as to result in a miscarriage of justice," or, most recently, unless the verdict is "so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate."

> At the appellate level, in reviewing a trial judge's grant of a new trial for excessive verdict, we should not apply the same standard. The trial judge's view that a verdict is outside the proper range deserves considerable deference. His exercise of discretion in granting the motion is reviewable only for abuse. Thus we will reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was *clearly* within "the maximum limit of a reasonable range."

(Emphasis in original.)

The trial court's determination of a reasonable limit to the jury award will be given considerable deference in our review.

■ In applying that standard to the facts of this case, we find no abuse of discretion on the part of the trial court. The trial court found the verdict to be "grossly and shockingly excessive." Our review convinces us that the trial court was justified in determining that $50,000 was the maximum limit justifiable under the evidence.

It is also clear from the District Court's statement in ordering the remittitur that it gave proper consideration to the jury's role in assessing damages. See note 3, *supra*. The court's statement indicates that in ordering the remittitur it was allowing the maximum limit sustainable on a jury verdict even though it thought that $15,000 to $20,000 was fair and reasonable compensation.

In summation, we reiterate what was stated in *Solomon, supra*, 294 F.2d at 447, "that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court * * *." We will not disturb its action on appeal absent a clear abuse of discretion. No clear abuse of discretion is shown here.

We turn now to the issue of subject matter jurisdiction raised by defendant. The defendant challenges the admiralty and maritime jurisdiction of the court by denying that plaintiff was a seaman or a crew member of a vessel of the defendant at the time of his injury. The defendant views plaintiff's exclusive remedy as either Arkansas workmen's compensation benefits or under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., since the accident occurred upon navigable waters.

The Jones Act [5] is an expansion of the common law admiralty jurisdiction under Congress' Commerce and Necessary and Proper Clause powers. U.S.Const. art. I, § 8; Swanson v. Marra Brothers, 328 U.S. 1, 5, 66 S.Ct. 869, 90 L.Ed. 1045 (1946); O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 39, 63 S.Ct. 488, 87 L.Ed. 596 (1943). The defendant points to Atkins v. Greenville Shipbuilding Corp., 411 F.2d 279 (5th Cir.), cert. denied, 396 U.S. 846, 90 S. Ct. 105, 24 L.Ed.2d 96 (1969), as excluding from the definition of "vessel" in

---

5. The Act states in relevant part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply * * *.

46 U.S.C. § 688.

navigation and consequent admiralty jurisdiction floating dry docks and inland construction barges which have no navigational crews nor motive power of their own. In *Atkins* the court affirmed a summary judgment denying subject matter jurisdiction over an unseaworthiness claim by a shorebased welder injured on a floating dry dock. The court noted that the dry dock was moored in the exact position where it was constructed and that it was neither designed nor used for transportation.

The Fifth Circuit reached a similar decision in Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir.), cert. denied, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973), in holding that a floating platform moored in navigable waters, secured to a dock by ropes and functioning only as a stationary construction platform not designed for transportation, was not a "vessel" for purposes of general maritime or Jones Act jurisdiction. The defendant here analogizes that its floating barge, moored to the bank and the template, was nothing more than a floating stage and not a vessel in navigation as a matter of law.

However, what is a vessel and who is a crew member are ordinarily jury questions. Offshore Company v. Robison, 266 F.2d 769, 780 (5th Cir. 1959). The issue of whether the barge was a vessel within the meaning of the law and whether the plaintiff was a member of the crew of that vessel at the time he was injured was submitted to the jury for its determination. The District Court in its memorandum opinion summarized the jury's verdict as finding that the plaintiff was injured in the course of his employement on a barge which was a vessel within the meaning of the law, that the plaintiff was a member of the crew of that vessel at the time he was injured, and that the injury was proximately caused by the defendant's negligence or by unseaworthiness of the barge or by both negligence and unseaworthiness.

Here the barge was in navigable waters and the men were working on a maritime installation. Part of plaintiff's work was on the barge itself in connection with his other duties constructing the dolphin. There appears to be a sufficient nexus between the plaintiff's work on the floating barge and the installation of the maritime dolphin structure to merit submitting the issue to the jury. In light of the record, we cannot say as a matter of law that the jury's verdict was legally erroneous. The jury can approve Jones Act coverage if there is evidence that (1) the injured workman performed at least a substantial part of his work on the vessel (virtually any floating structure used for transport in navigable waters) and (2) the capacity in which he was employed and duties which he performed contributed to the function of the vessel or to the accomplishment of its mission. Offshore Company v. Robison, *supra* at 779.[6]

The facts of this case fall within the marginal area of Jones Act or maritime jurisdiction. However, since we believe the issues were properly submitted to the jury, we are not prepared to hold as a matter of law that the barge in question was not a vessel or that the plaintiff was not a crew member within the liberal definition of those terms under the Jones Act or the admiralty doctrine of unseaworthiness. As an appellate court, we must view the evidence in the light most favorable to sustaining the jury's verdict, and we accept as established all reasonable inferences which tend to support the jury's determination. We therefore find no error in the court's refusal to direct a verdict for the defendant.

The judgment of the District Court is affirmed.

---

6. Although the defendant also relies on Rotolo v. Halliburton Co., 317 F.2d 9 (5th Cir.), cert. denied, 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79 (1963), and Powers v. Bethlehem Steel Corp., 477 F.2d 643 (1st Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed. 2d 106 (1973), we agree with the courts deciding those cases that their circumstances did not meet the *Offshore* standard stated here.