[Civ. No. 7128. First Appellate District, Division One.—September 27, 1930.]

KATHERINE ROVEGNO, Appellant, v. SAN JOSE KNIGHTS OF COLUMBUS HALL ASSOCIATION (a Corporation) et al., Respondents.

Owen D. Richardson and Donald B. Richardson for Appellant.

Louis Oneal, Maurice J. Rankin, David M. Burnett and John M. Burnett for Respondents.

LUCAS, J., *pro tem.*—This appeal was taken by the plaintiff in the court below from the order and judgment of said court granting defendants' motion for a nonsuit.

Plaintiff sued for fifty thousand dollars as damages by reason of the death of her nineteen year old son, Edward Rovegno, who died in a swimming pool situate in a building in San Jose, California, owned by respondent San Jose Knights of Columbus Hall Association, a corporation, and used for social and athletic purposes by the members of respondent Knights of Columbus, San Jose Council No. 879, an unincorporated association. Plaintiff (appellant herein) alleged negligence on the part of the above-named respondents by reason of their failure to provide at such swimming pool for the presence of some person or persons experienced in life-saving.

The motion for a nonsuit, made at the conclusion of plaintiff's case, was based on the grounds (1) that none of the material allegations of the complaint was sustained by the proof; (2) that there was no showing of negligence on the part of either of the defendants, and (3) that there was no showing that the deceased died as the proximate result of any negligence on the part of either.

Deceased was a member of the respondent association. Part of the monthly dues paid by members of the association went to it and part went to the respondent corporation, the association renting the building and its facilities from the corporation on a per capita basis. The board of directors of the corporation constituted the house committee of the association, which committee had the power to make rules for the use of the building. The secretary of the association

was also building secretary of the corporation. As secretary of the association his principal duty consisted in collecting dues. As secretary of the corporation he had charge of the building and served the members of the association generally in their desires, seeing that they had proper attention in the pool-room, the billiard-room and the swimming pool. It was also his duty to superintend the filling and emptying of the swimming pool, the dimensions of which were sixty by thirty or thirty-five feet. Among the bathing rules of the association, copies of which were mailed to its members and posted in the locker-rooms, the drier-room and the swimming pool, was one reading "Bathers using pool do so at their own risk". Neither respondent maintained a lifeguard or other attendant skilled in life-saving at said swimming pool.

The respondent association had a membership of between six hundred and seven hundred, each one of whom was entitled to bring a guest, who in turn upon the payment of a fee of fifty cents was entitled to the use of the pool. The latter fee went to the respondent corporation. A fair conclusion to be drawn from the evidence is that the swimming pool was in a measure and through agreement between themselves jointly maintained and conducted by the two respondents.

This briefly pictures the relationship of the parties and the conditions existing at the time young Rovegno with a boy guest went swimming in the pool on the afternoon of June 28, 1927. No one else was present at the time, and no member or officer of either respondent had any knowledge or notice that the boys intended to swim in the pool or subsequently that they were swimming in the pool.

Rovegno's companion first swam across the pool. When he turned around, Rovegno, who concededly was not a good swimmer, started across. At a point about halfway across the pool he was seen to jump up and down in deep water. His face was "as white as could be" and "bore a frightened look" or "horrible expression". His companion being unable to assist him from the pool, first called out and then ran for assistance. He found a man in the office, who went outside the building and returned with the secretary of the respondents. They found Rovegno lying at the bottom of

the pool at the nine-foot depth. When removed from the water his face was purple. All efforts at resuscitation failed. A quantity of water estimated at from a cupful to a quart was seen to flow out of his mouth. At the trial one physican called as an expert, in ·answer to a hypothetical question gave it as his opinion that death was caused by drowning. The physician who performed the autopsy after the body had been embalmed, testified that death resulted from a cardiac condition "more than anything else"—rather than "from real drowning".

In passing on the motion for a nonsuit the trial court was not called upon to give consideration to the first ground stated therein, namely, "that none of the material allegations of the complaint was sustained by the proof." Nor ought this court review the trial court's action in that regard. A party moving for a nonsuit should state the grounds relied upon with such particularity as to direct the attention of the court and counsel to the supposed defects in plaintiff's case. (*Millar* v. *Millar,* 175 Cal. 797, at 800 [Ann. Cas. 1918E, 184, L. R. A. 1918B, 415, 167 Pac. 394].)

In support of their motion on the third ground respondents contend that there is no proof that decedent died from drowning. This is untenable. The testimony of eye-witnesses to the occurrences preceding Rovegno's death, the testimony that a quart of water was expelled from his mouth, and the opinion of one expert is certainly sufficient to justify the submission of that question to the jury and sufficient to sustain a finding of death by drowning should the jury so find.

The most serious question for determination is the question of proximate cause—does the record disclose any evidence of negligence on the. part of respondents proximately causing the death of appellant's son? As above stated, the only negligence alleged is the failure of respondents to provide a life-guard or other person or persons skilled in life-saving. Even had such a guard been present, respondents urge, there is no showing that the boy's life would have been saved. Just what would have happened had a life-guard been present is, of course, not capable of direct proof. It is largely a matter of speculation or of inference. Even so, it has been held that the question is one for the jury and not for the court.

In one case (*Brotherton* v. *Manhattan Beach Imp. Co.*, 48 Neb. 563 [58 Am. St. Rep. 709, 33 L. R. A. 598, 67 N. W. 479, 481], a mother brought suit for damages on account of the death of her son by drowning, alleged to have been caused principally by the negligent failure of the defendant to have present any person or persons to superintend the bathing or to search for and recover decedent upon his disappearance from the surface of the water. The court, after expressly recognizing the rule that in negligence cases it is not sufficient to merely show that negligence existed, but that such negligence must also be shown to be the proximate cause of the injury complained of, reversed the trial court, which had directed a verdict for the defendant, on the ground that "the evidence viewed in one light justified an inference favorable to the plaintiff, should the jury draw such inference".

In California inferences in themselves constitute a recognized class of indirect evidence which a court or jury may not disregard. (Code Civ. Proc., secs. 1957, 1958.) Furthermore, "upon a trial of a case the jury is to find not only the facts but also the inferences from them, if any may properly be drawn. . . . When an inference is supported by the evidence and is not opposed to human experience and reason it cannot be disturbed by an appellate court". (10 Cal. Jur. 738.)

The only California case applicable that this court has been able to find is the case of *Flora* v. *Bimini Water Co.*, 161 Cal. 495 [119 Pac. 661]. In that case death was alleged to have been due to the negligent failure of the defendant, the proprietor of a public bathing establishment, to provide a person or persons experienced in life-saving to be then and there present for the purpose of rescuing the deceased or anyone else liable to drown. The lower court found that the defendant did have present persons experienced in life-saving and did provide proper life-guards. The upper court in its opinion, in sustaining the judgment of the court below, at page 498, used this language:

"Since the court found in this case that the defendant did have present persons experienced in life saving and did provide proper life-guards, it is immaterial whether it be said that the duty of furnishing such protection arises as a

matter of law or that the necessity for such provision is in each case a question of fact for the trial court or jury." The court concluded: "The mere fact that a drowning occurred, regrettable though it be, is not of course conclusive proof of negligence. . . . It was for the court below to determine under all the facts whether the arrangements made were reasonably adapted to the end of protecting the defendant's patrons and were such as an ordinary prudent person, situated as defendant was, would have made."

Some attempt has been made to distinguish a private swimming pool like the one involved in the case at bar from a public swimming pool which the public generally is invited to use for hire. We doubt, however, if such distinction can be drawn as would justify this court in holding as a matter of law that there was no negligence on the part of respondents herein. While it is true respondents constituted a private corporation and a private association, respectively, they were in fact maintaining and managing a swimming pool of large dimensions, to which some six hundred or seven hundred persons, together with their invited guests, had access. In such circumstances we believe that the amount of care with which they were chargeable would approximate the amount chargeable to the proprietor of an institution to which the public generally was invited.

From the foregoing considerations we feel justified in holding that it was for the jury, rather than the trial court, to pass on the question of proximate cause and to determine whether the arrangements made by respondents were reasonably adapted to the end of protecting the lives of the association's members and guests and were such as ordinary prudent persons, situated as respondents were, would have made.

This disposes of all questions raised on appeal except the question of assumption of risk voiced by respondents, who claim that the decedent was bound by the rules and regulations of the respondent association, of which he was a member and in the management of which he was equally responsible with the other members. In this regard it is contended that he was bound by the rule that "Bathers using pool do so at their own risk", and that the respondent association did not owe to him the duty to provide a facility,

the lack of which was the basis of the action and for the absence of which he was, as a member of the association, partially responsible. We cannot subscribe to these principles.

This action is based upon alleged negligence, while the last suggested defense, if it be a defense, arises from contract. Even though it might have been available against the decedent had he lived and brought suit for damages on account of personal injuries, it cannot operate to defeat his mother's independent statutory right of action given her under the provisions of section 376 of the Code of Civil Procedure. (*Earley* v. *Pacific Elec. Ry. Co.*, 176 Cal. 79 [L. R. A. 1918A, 997, 167 Pac. 513].)

In addition, it is to be noted that the respondents did not base their motion for a nonsuit upon the grounds last discussed, and it is well established that a respondent cannot on appeal urge grounds other than those pointed out in the trial court in support of an order granting a nonsuit. (2 Cal. Jur. 277.)

We conclude from the foregoing that this case is one that should properly have been submitted to the jury, and the trial court erred in granting respondents' motion for a nonsuit. The judgment appealed from is reversed and the cause remanded for further hearing.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 24, 1930.