Anita **THOMAS** and Jerry Thomas, Personal Representatives of Kent Thomas, Deceased, Plaintiffs,

v.

**BENTON COUNTY, ARKANSAS, et al., Defendants.**

Civ. No. 88–5044.

United States District Court, W.D. Arkansas, Fayetteville Division.

Dec. 23, 1988.

James G. Lingle, Rogers, Ark., April Charney, Ozark Legal Services, Fayetteville, Ark., for plaintiffs.

David Klinger, Pros. Atty., Bentonville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case was brought under the provisions of 42 U.S.C. § 1983. The court has jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1343.

On June 22, 1983, plaintiffs' decedent, Kent Thomas, their son, was incarcerated in the Benton County, Arkansas, jail. Late on the evening of that day he tore strips from his bedding and fashioned a "rope". He hung himself from a light fixture in his cell, also occupied at the time by two other inmates. These two individuals declined to come to his aid, because, as expressed by them at the trial, they did not want to become involved and perhaps be charged with a "murder rap". Instead of doing the obviously humanitarian thing of coming to his aid, they claimed that they began to bang on the cell bars and yell at the jailers that Thomas had hung himself. Although there was a dispute in the evidence about how long it took the jailers to respond, it is clear that several minutes elapsed before a jailor came to the scene.

Upon arriving at the scene, the jailor saw Thomas hanging from the fixture but did not enter the cell to aid him because of a jail rule that prohibited jailers from entering occupied cells on felony row unless at least two jailers were present. The night of this occurrence, only two jailers, a male and a female, were on duty. The female jailer also served in the capacity of despatcher, and another rule prohibited her from leaving the radio. The jail was located within the city limits of Bentonville, Arkansas, so the jailers contacted the Bentonville Police (their usual custom when additional aid was needed) and Bentonville policemen arrived on the scene a short time later. An ambulance was called, and the jailor and one of the police officers cut Thomas down and attempted cardio pulmonary resuscitation while waiting for the ambulance. When the ambulance attendants arrived, they continued the resuscitation efforts until Thomas arrived at the hospital. The doctor at the hospital attempted also to revive him, but was unable to do so, and he was pronounced dead.

Plaintiffs, his parents and personal representative, claim that the existence of harmful conditions and practices and the lack of appropriate procedures in the operation of the Benton County Jail denied Kent Thomas his constitutional right to due process. They sought damages from defendant, Benton County, Arkansas, for pain and suffering, mental anguish, and the loss of their son's companionship. The case was tried to a jury over a four-day period beginning December 5, 1988, with three full days being required for the testimony and presentation of other evidence to the jury. After oral arguments were presented and the jury was instructed, it answered the first interrogatory submitted to it as follows:

Interrogatory No. 1: Do you find from a preponderance of the evidence that the defendant, Benton County, deprived plaintiff, Kent Thomas, of due process of law by failing to provide reasonable emergency and medical assistance or by delaying access to such assistance and that such failure displayed a deliberate indifference to the medical needs of Kent Thomas?

Answer: No.

December 8, 1988, Herman A. Henderson, Foreperson

■ Plaintiffs have timely filed a motion for a new trial. They seem to contend that the trial court should, in effect, weigh the evidence and determine that the jury's verdict was against the clear weight of the evidence. They quote from *Ouachita National Bank v. Tosco Corp.*, 686 F.2d 1291, 1294 (8th Cir.1982) that:

> Furthermore, the district court, in passing on such motions, is not required to view the evidence in the light most favorable to the non-movant; rather, 'it may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.' *Slatton v. Martin K. Eby Constr. Co., Inc.*, 506 F.2d [505] at 508 n. 4. [ (8th Cir.1974) ].

That is, indeed, what *Tosco* said, and the rule announced by the Court of Appeals for the Eighth Circuit in earlier cases such as *Bates v. Hensley*, 414 F.2d 1006 (8th Cir. 1969) and *Slatton, supra*.

However, other cases by other panels of the Court of Appeals for the Eighth Circuit have raised doubt, at least in this court's mind, about whether that is the rule that is uniformly applied by the Court of Appeals for this circuit. In fact, the court frankly believes that the standard announced in those cases conflicts with that set forth and applied in other cases discussed below, most of which were decided subsequent to those cited above. This "problem" first

arose in *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 (8th Cir.1972) *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). In that case the Court of Appeals said that a trial court may not grant a motion for a new trial unless it finds that the verdict is against the "clear weight", "overwhelming weight", or "great weight" of the evidence. *See Fireman's Fund, supra*, at 186–87 and *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 416 (8th Cir.1985).

In fact, if the court means what it says in Fireman's Fund, the test might even be more severe than that. At p. 187, the court, in deciding to overrule the trial court's granting of a new trial said:

> The evidence is such that reasonable men may differ as to the result, therefore, the determination should properly be left for the jury.

If that is the test to be used in ruling on Rule 59 motions, the court has a great deal of difficulty distinguishing that test from the one that applies to the consideration of a motion for directed verdict or for judgment notwithstanding the verdict.

Be that as it may, the court, as recently as May of 1987, has continued to state that the trial court must find that the verdict is against the "clear weight, overwhelming weight, or great weight of the evidence." *McBryde v. Carey Lumber Co.*, 819 F.2d 185 (8th Cir.1987).

This court, respectfully, does not believe that it is consistent to say in one case or some cases that trial courts "may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict" [1], and in other cases say that a new trial shall not be granted unless the trial court finds that the verdict is against the "clear weight, overwhelming weight, or great weight of the evidence" [2] and it is certainly inconsistent to say that a new trial will not

---

1. *Slatton v. Martin K. Eby Const. Co., Inc.*, 506 F.2d 505, 508 n. 4 (8th Cir.1974), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975); *Ouachita National Bank v. Tosco Corp.*, 686 F.2d 1291, 1293 (8th Cir.1982).

2. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 (8th Cir.1972); *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 416 (8th Cir., 1985); *McBryde v. Carey Lumber Co.*, 819 F.2d 185 (8th Cir.1987).

be granted if the evidence is such that "reasonable men may differ." [3] Is it possible for there to be "substantial evidence" and for that evidence to still be against the "clear weight, overwhelming weight, or great weight of the evidence"? May a trial court "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict" but still be precluded from granting a new trial in any case where "reasonable men may differ as to the result"? This court thinks not.

Because the most recent Court of Appeals cases setting forth the standard to be applied utilize the "clear weight, overwhelming weight, or great weight of the evidence" standard, the court will presume that that is the standard to be applied in this case. *See also Crowley Beverage Company, Inc. v. Miller Brewing Co.,* 862 F.2d 688 (8th Cir.1988).

▆ In this matter, the court simply cannot say that the jury verdict is against the "clear weight" of the evidence, nor of the "overwhelming weight" of the evidence, nor the "great weight" of the evidence, and certainly can not say that reasonable minds could not differ as to the result. The deliberate indifference standard applied in cases such as this one is a difficult one to meet. There is evidence, if the jury believed it, and it apparently did, that would justify it in reaching the decision that it reached.

Admittedly, at first blush at least, there appears to be little explanation and little justification for the jailers leaving Kent Thomas hanging for several minutes while they waited for help to come to the jail. However, the jailor testified that the banging on the cell doors which caused him to go to the cell at this time was merely the culmination of an afternoon of disruption by the inmates. In fact, Kent Thomas was placed in the cell with the other two men who, inexplicably, let him die, because his cell had been flooded by Thomas and other inmates. The evidence showed that, prior to this removal to the cell in which he hanged himself, other inmates had made "firebombs" which were described by one of Thomas' cell mates as large wads of toilet paper which were then lighted and flushed down the toilet. This apparently was done to cause loud noises and do damage to the jail plumbing. These activities had caused Thomas' cell to be flooded.

Testimony at the trial indicated that it was not uncommon for there to be banging on the bars of the cells at all hours of the day and night, and it was sometime necessary to turn the volume down on the intercom system used to monitor the activities in the cell block so the jailers could hear and be understood in telephone and radio conversation.

The jailor who was first upon the scene said that he believed that Thomas' feet were touching the floor (this seems to be substantiated by one of Thomas' cell mates), and it was believed by the jailor that this might be a "fake" hanging as a prelude to a jailbreak attempt. This belief was certainly supported by the incredible and inhumane action of his cellmates who, according to their own testimony, let him hang from the light fixture for several minutes until he was dead, refusing to come to his aid. It would certainly be reasonable for the jury to believe that it was reasonable for the jailor to believe that human beings don't "act that way", thus supporting his belief that the hanging was a ruse to get him into the cell so an escape could be attempted.

The court cannot say that it was against the clear weight, overwhelming weight, or great weight of the evidence for the jury to determine that the jailor's actions, under the circumstances, were reasonable, and certainly that his actions do not evidence a "deliberate indifference" to the needs of Kent Thomas. For this reason, the court believes that, based on the tests applicable in this circuit, the motion for a new trial cannot be granted. It will be denied by separate order of the court.

3. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179 (8th Cir.1972).